AF Approval __*JMH*___                                    Chief Approval __*MPF*___

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                                    Case No. 6:25-cr- 171-JSS-RMN

OMAR JOEL RIVERA OLIVO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, OMAR JOEL RIVERA OLIVO, and the attorney for the defendant, Joshua Lukman, AFD mutually agree as follows:

**A.**     **Particularized Terms**

    1.     Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information. Counts One and Two charges the defendant with possession and transfer of a machine gun, in violation of 18 U.S.C. § 922(o).

    2.     Maximum Penalties

        Counts One and Two each carry a maximum sentence of 10 years imprisonment, a fine of up to $250,000, a term of supervised release of up to three years, and a special assessment of $100.

        With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses,

Defendant's Initials _____

the Court may order the defendant to make restitution to any victim of the offense(s),

or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of

the offenses with which defendant has been charged and to which defendant is

pleading guilty.

The elements of Counts One and Two are:

First:    the Defendant possessed a "machine gun"; and

Second:    the Defendant knew it was a machine gun or was aware of the
firearm's essential characteristics that made it a "machine
gun" as defined.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment

before a federal grand jury.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information

is received suggesting such a recommendation to be unwarranted, the United States

Defendant's Initials _____        2

will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a

Defendant's Initials _____    3

recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant

Defendant's Initials _____        4

agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _____     5

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

9.    Abandonment of Property

The defendant acknowledges that he has an ownership interest in the following item of property that is in the lawful custody of the United States: a non-serialized privately manufactured lower receiver seized from the defendant's residence on or about May 1, 2025.

The defendant understands that he has the right and opportunity to claim the listed property. The defendant hereby knowingly and voluntarily waives

Defendant's Initials _____    6

all right, title, and interest in the listed property. The defendant waives, releases, and withdraws any claim that the defendant has made with respect to the listed property, and waives and releases any claim that the defendant might otherwise have made to the listed property in the future.

The defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. The defendant also consents to the destruction of the property, or other disposition of the property in accordance with law, and without further notice to the defendant.

The defendant waives any right the defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the abandonment, disposition, and/or destruction of the listed property. The defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed property, including any such claim for attorney's fees and litigation costs.

The defendant further agrees to hold the United States of America, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the listed property.

Defendant's Initials _OL_____        7

B.    **Standard Terms and Conditions**

　　1.    Restitution, Special Assessment and Fine

　　　　　　The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

　　　　　　On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____    8

2.  Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.  Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _____    9

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials _____        10

by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _____      11

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

the defendant is released from his waiver and may appeal the sentence as authorized

by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other

federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or

others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in

camera, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion

of any kind. The defendant further acknowledges defendant's understanding of the

nature of the offense or offenses to which defendant is pleading guilty and the

elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _α____                12

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____        13

12.    Entire Agreement

This plea agreement, including Exhibit A, constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 13 day of ~~May~~ June, 2025.

Respectfully Submitted,

GREGORY W. KEHOE
United States Attorney

OMAR JOEL RIVERA OLIVO
Defendant

Dana E. Hill
Assistant United States Attorney

Joshua Lukman, AFD
Attorney for Defendant

Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _OR_                    14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 6:25-cr- 171-JSS-RMN

OMAR JOEL RIVERA OLIVO

PERSONALIZATION OF ELEMENTS

For Count One and Two, on March 13, 2025, and March 28, 2025:

First:     Did you possess a "machine gun"?

Second:  Did you know it was a machine gun or were you aware of the
         firearm's essential characteristics that made it a "machine gun"?

Defendant's Initials _____        15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
*ORLANDO DIVISION*

UNITED STATES OF AMERICA

    v.                          Case No. 6:25-cr- 171-JSS-RMN

OMAR JOEL RIVERA OLIVO

## FACTUAL BASIS

In February 2025, an ongoing Orange County Sheriff's Office (OCSO) investigation revealed information about an ongoing network of distribution of automatic weapons and machine gun conversion devices. OCSO and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) investigated and uncovered the following true facts about OMAR JOEL RIVERA OLIVO:

From on or about January 14, 2025, until on or about February 13, 2025, OCSO narcotics investigators used an undercover officer (UC) to purchase various drugs from RIVERA OLIVO. For each purchase from January 14, 2025, through February 13, 2025, the UC would arrange the meeting with RIVERA OLIVO and then meet with RIVERA OLIVO in the vicinity of RIVERA OLIVO's house in the UC's vehicle. In each transaction, the suspected substances tested positive using a field test:

| Date | Suspected Substance |
|---|---|
| 1/16/25 | 33.07 grams of suspected marijuana |
| 1/22/25 | 2.55 grams of suspected cocaine<br>82.21 grams of suspected marijuana |
| 2/4/25 | 4.19 grams of suspected cocaine<br>49.5 grams of suspected marijuana |

Defendant's Initials _OA_        16

| Date | Suspected Substance |
|------|---------------------|
| 2/7/25 | 15.09 grams of suspected cocaine |
| | 6.05 grams of suspected marijuana |
| 2/13/25 | 22.24 grams of suspected cocaine |

On February 13, 2025, in addition to purchasing the suspected cocaine, the UC purchased a Glock 22, G5, .40 caliber pistol bearing Serial Number (SN): BYNM226 from RIVERA OLIVO.

On February 27, 2025, RIVERA OLIVO sent the UC an Instagram video which showed someone in a vehicle shooting an automatic weapon into a police car. The caption of the video was "Chevy Malibu hit LAPD with the switch and got outta there quick". RIVERA OLIVO commented on the video telling the UC "This is what them filly's be doings fr." RIVERA OLIVO sent a follow up message clarifying the message saying "Fully's* I think that's a 556 ARP fully automatic." In this message, RIVERA OLIVO was referring to a firearm that had been converted to a fully automatic firearm by use of a machine gun conversion device ("MCD").

On February 28, 2025, OCSO narcotics and ATF conducted a controlled purchase with RIVERA OLIVO. During this purchase RIVERA OLIVO entered the entered the UC vehicle as he had done on prior occasions. Once inside the vehicle RIVERA OLIVO pulled a firearm from his waistband. RIVERA OLIVO then pulled a clear small bag containing a white powdery substance and a clear bag containing a green leafy substance from his pant pocket. In this transaction, the UC purchased an Anderson Manufacturing, model AM-15, multi caliber pistol bearing serial number (SN) 24164769, approximately 32.74 grams of suspected cocaine and approximately

Defendant's Initials _OA_                    17

5.43 grams of suspected marijuana. Field tests performed on the suspected marijuana and cocaine tested positive for each respective drug.  The firearm purchased is depicted here:



While RIVERA OLIVO was in the UC's vehicle, the UC inquired if RIVERA OLIVO could obtain machine gun conversion devices or MCDs. RIVERA OLIVO stated that he could get MCDs and would let him know when he was able to get them.

On March 10, 2025, RIVERA OLIVO informed the UC that he was able to obtain two "Glock switches" and one "switch" for an AR Style pistol.

On March 13, 2025, OCSO narcotics and ATF conducted a controlled purchase with RIVERA OLIVO.  RIVERA OLIVO entered the UC's vehicle and retrieved a firearm from his person and a clear bag containing three MCDs. While RIVERA OLIVO was in the UC's vehicle, RIVERA OLIVO stated that Conspirator-1 was on the way to RIVERA OLIVO's residence with the additional firearm. Several minutes later a white vehicle arrived at the RIVERA OLIVO's residence. RIVERA OLIVO exited the UC's vehicle, greeted the white vehicle by shaking the hand of the front seat passenger in the white vehicle, entered the white vehicle, and

Defendant's Initials _OL____            18

sat behind the front seat passenger. After several minutes RIVERA OLIVO exited the white vehicle, shook the hand of the front seat passenger, and returned to the UC's vehicle. Once inside the UC's vehicle, RIVERA OLIVO retrieved a firearm from his person and handed it to the UC. The UC manipulated the firearm and noticed that there was a loaded magazine inserted into the firearm.

During this purchase, the UC purchased a Palmetto State Armory, model PA-15, multi caliber pistol bearing SN SCB371287, a second firearm – delivered during the transaction – an Anderson Manufacturing, model AM-15, multi caliber pistol bearing SN 24124334, three MCDs and 13 rounds of ammunition, depicted below:



On March 18, 2025, RIVERA OLIVO sent the UC a picture of a firearm that had an MCD attached to the firearm along with a drum magazine meant to hold significant quantities of ammunition that is associated with "machine gun" firing. RIVERA OLIVO stated that he had to file down a part of the gun for the firearm to function with the MCD.

On or about March 20, 2025, the UC was in contact with RIVERA OLIVO. RIVERA OLIVO told the UC that he wanted to start 3D printing his own "switches" and start installing these "switches" on firearms himself.

Defendant's Initials _ _ _ _ _ _         19

On March 25, 2025, the UC was in contact with RIVERA OLIVO. RIVERA-OLIVO sent the UC a video of an unidentifiable individual shooting a firearm in a manner consistent with automatic firing. RIVERA OLIVO sent this video to the UC to show him how the "switch" would work.

On March 28, 2025, OCSO narcotics and ATF conducted a controlled purchase with RIVERA OLIVO. When RIVERA OLIVO entered the UC vehicle, he instructed the UC to drive to an address on Navarre Avenue in Orlando, Florida. RIVERA OLIVO stated that he had the firearms in a book bag that was hidden in a bush due to his parents being home and doing renovations at his residence. When the UC arrived at the area, RIVERA OLIVO exited the vehicle and retrieved a black and red Homer Simpson bookbag from the bushes on the side of the road.

RIVERA OLIVO returned to the UC vehicle with the black and red Homer Simpson bookbag and instructed the UC to drive back to RIVERA OLIVO's residence. Once back at his residence, RIVERA OLIVO pulled an AR style pistol out of the Homer Simpson bookbag. RIVERA OLIVO took the magazine out of the AR style pistol to show that the magazine was loaded. RIVERA OLIVO then opened the AR style pistol to show the UC the "switch" that was installed. While showing the UC the MCD, RIVERA OLIVO stated that he installed the "switch" himself and that the "switch" made the firearm fully automatic.

RIVERA OLIVO reached back into the Homer Simpson Bookbag and retrieved another firearm with a 50 round drum magazine inserted. RIVERA OLIVO took the magazine out of the firearm to show that the magazine was loaded.

Defendant's Initials _OL_            20

RIVERA OLIVO then showed the UC the slide of the Glock 40 which had a "switch" installed on it. According to RIVERA OLIVO, for the "switch" to make the firearm fully automatic a "sear" had to be installed on the firearm. While in the UC vehicle, RIVERA OLIVO installed the "sear" on the firearm to make sure the firearm would be fully automatic.

The UC purchased an Anderson Manufacturing, model AM-15, multi caliber pistol bearing serial number 24124333; a Glock 22 Gen 5, .40 caliber, pistol bearing serial number BVER599; 29 rounds of .40 caliber ammunition; 20 rounds of 7.62 ammunition; and two MCDs which were installed in the firearms, depicted below:



From February 13, 2025 onward, RIVERA OLIVO distributed the following firearms, including MCDs, to the UC on the following dates:

| Date | Firearm | Serial Number |
|------|---------|---------------|
| 2/13/25 | Glock 22, G5, .40 caliber pistol | BYNM226 |
| 2/28/25 | Anderson Manufacturing, model AM-15, multi caliber pistol | 24164769 |
| 3/13/25 | Palmetto State Armory, model PA-15, multi caliber pistol | SCB371287 |
| 3/13/25 | Anderson Manufacturing, model AM-15, multi caliber pistol | 24124334 |
| 3/13/25 | Three machine gun conversion devices | None |

Defendant's Initials _____

| Date | Firearm | Serial Number |
|------|---------|---------------|
| 3/28/25 | Anderson Manufacturing, model AM-15, multi caliber pistol, with machine gun conversion device installed | 24124333 |
| 3/28/25 | Glock 22 Gen 5, .40 caliber, pistol, with machine gun conversion device installed | BVER599 |

In all of the above conduct, RIVERA OLIVO, on March 13, 2025 and March 28, 2025, knowingly possessed and transferred a machine guns.

On May 1, 2025, ATF conducted a search of the residence of RIVERA OLIVO. At the time of the search warrant, RIVERA OLIVO possessed a small amount of suspected marijuana, a digital scale, less than $1,000 in currency, and privately manufactured lower receiver without any serial number associated with it.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials _OL_____                22